In re **ENGINEERING ANIMATION SECURITIES LITIGATION**

No. 4–99–CV–10117.

United States District Court,
S.D. Iowa,
Central Division.

March 24, 2000.

David L Phipps, Whitfield & Eddy PLC, Des Moines, IA, Steven G Schulman, Samuel H Rudman, David J Bershad, Janine L Pollack, Milberg Weiss Bershad Hynes & Lerach Llp, New York, NY, Jeffrey R Anderson, Randall H Steinmeyer, Reinhardt & Anderson, St Paul, MN, Jack G Fruchter, Fruchter & Twersky, New York, NY, for Abraham Schreiber.

David L Phipps, Terri L Combs, Faegre & Benson, Des Moines, IA, Boris Feldman, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, Andrew L Barroway, Schiffrin & Craig Ltd, Bala Cynwyd, PA, Steven G Schulman, David J Bershad, Janine L Pollack, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, Jeffrey R Anderson, Reinhardt & Anderson, St. Paul, MN, Jack G Fruchter, Fruchter & Twersky, New York, NY, for Daniel Sepe.

David L Phipps, Whitfield & Eddy, PLC, Des Moines, IA, David J Bershad, Janine L Pollack, Milberg Weiss Bershad Hynes & Lerach, LLP, New York, NY, Jack G Fruchter, Fruchter & Twersky, New York, NY, for David Hershkowitz, Madelon R. Tyler.

David L Phipps, Whitfield & Eddy, PLC, Des Moines, IA, Steven G. Schulman, David J Bershad, Janine L Pollack, Milberg Weiss Bershad Hynes & Lerach, LLP, New York, NY, Jeffrey R. Anderson, Reinhardt & Anderson, St. Paul, MN, Jack G Fruchter, Fruchter & Twersky, New York, NY, David R Scott, Scott & Scott LLC, Colchester, CT, Steven E Cauley, Law Offices of Steven E Cauley PA, Little Rock, AR, for Rocco Spaccio.

Terri L Combs, Faegre & Benson, Des Moines, IA, Boris Feldman, Lyle Roberts, Christian Word, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for Matthew M. Rizai.

Boris Feldman, Lyle Roberts, Christian Word, Wilson Sonsini Goodrich & Rosati, Palo Alto, CA, for Martin J. Vanderploeg, Jerome M Behar, Jamie A Wade, Engineering Animation, Inc.

## ORDER

LONGSTAFF, District Judge.

Before the Court is a motion to dismiss brought by defendants Engineering Animation, Inc. ("EAI"), Matthew M. Rizai, Martin J. Vanderploeg, Jerome M. Behar and Jamie Wade (collectively, "defendants"). The motion was filed on October 13, 1999. Plaintiffs, a class representing shareholders of EAI, filed a memorandum of law opposing defendants' motion to dismiss on December 7, 1999. Defendants filed a reply brief on January 31, 2000. The matter is now considered fully submitted.[1]

## I. BACKGROUND

EAI is a Delaware corporation which is located in Ames, Iowa.[2] It was incorporated in 1989. EAI specializes in developing

---

1. Though oral argument was requested, the Court finds it unnecessary.

2. In accordance with the standard for considering motions to dismiss which is discussed *infra,* the Court has accepted as true all factual allegations in plaintiffs' complaint.

and applying two and three dimensional visualization technology. EAI develops and produces software for manufacturing companies and for use in the education, consumer and entertainment markets. Its stock is traded on the Nasdaq National Market.

Defendant Matthew M. Rizai serves as EAI's chairman, chief executive officer, director and treasurer. Martin J. Vanderploeg is a director and executive vice president for EAI. Jerome M. Behar has served as EAI's vice president of finance and chief financial officer since August 1997. Jamie Wade is vice president of administration and general counsel for EAI.

This action is brought by a class of plaintiffs who purchased the common stock of EAI between February 19, 1998 and April 6, 1999 ("the relevant class period"). The lead plaintiffs are Ronald Buch, Richard Dunphy, Vladimer Katz, Gilbert F. Mueller, Jr. and L.D. Eisenhart. Plaintiffs claim defendants conducted a continuous fraudulent scheme which injured all purchasers of EAI common stock during the relevant class period. The plaintiffs bring these claims based on alleged violations of Section 10(b) and 20(a) of the Securities and Exchange Act of 1934(SEA), along with Rule 10b–5 promulgated thereunder. Particularly relevant to these claims, and this motion by the defendants, is The Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub.L. No. 104–67.[3]

The continuous fraudulent scheme alleged by the plaintiffs will be divided into three categories of activities by the defendants for the purposes of this Order. First, plaintiffs allege defendants violated SEA sections 10(b), 20(a) and Rule 10b–5 via their accounting practices. The accounting practices at issue center around the acquisition of two other companies by EAI, and how those companies were recorded on EAI's books. Second, plaintiffs allege in their complaint that as a part of defendants' fraudulent scheme, defendants concealed their problems in product development and finalizing contracts in the winter and spring of 1999. Plaintiffs allege that these activities by defendants occurred primarily in February and March 1999, and constitute omitted material facts. Third, plaintiffs allege defendants violated the relevant statutory sections and rule with disclosures, filings and statements associated with the acquisition of two other companies and the product development problems. Plaintiffs allege these activities constituted fraudulent statements by the defendants.

## Accounting Practices

In November 1997, EAI acquired a company entitled Rosetta. EAI paid for this acquisition in two separate transactions by exchanging shares of its own outstanding common stock for shares of Rosetta common stock. In the second transaction to acquire Rosetta, EAI acquired approximately $7.1 million worth of Rosetta common stock, or 32% of the total value of Rosetta common stock. Of this amount, EAI allocated $5.6 million dollars to in-process research and development ("IPR & D").

On June 17, 1998 EAI acquired a second company which was entitled Sense8. This acquisition cost EAI $7.0 million of its own stock. Sense8 was a company in financial distress, as its liabilities exceeded its assets by approximately $2.4 million. Therefore, the total acquisition cost for EAI was $9.4 million. EAI recorded this acquisition as a purchase of $500,000 of goodwill and $9.8 million of IPR & D.

---

**3.** In the complaint, plaintiffs state three causes of action. The first is for violations of section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder. Compl. ¶¶ 108–118. The second is by all plaintiffs against the individual defendants for violations of section 20(a) of the Exchange Act. Compl. ¶¶ 119–124. The third is against Rizai and Vanderploeg on behalf of plaintiff Ronald Buch and the section 20(a) sub-class for violations of section 20(a) of the Exchange Act. Compl. ¶¶ 125–130.

Plaintiffs argue that by allocating significant portions of the purchase price of both Rosetta and Sense8 to IPR & D, EAI was able to boost its future earnings. Further, plaintiffs argue this was improper as contemplated by the standards set by generally accepted accounting principles ("GAAP"). Plaintiffs argue that both Rosetta and Sense8 had products that were already in use, and therefore the moneys that were expensed and written off as IPR & D should have been capitalized and recorded as assets. *See* Compl. ¶¶ 73–79.[4] Rosetta had software products which had already been licensed to customers, called PreVIEW and Prepare software products. Sense8 products were also already in existence, and EAI hoped to integrate their products with EAI's own VisProducts. Plaintiffs argue defendants' motives in allocating so much of the acquisitions to IPR & D was to inflate the price of the stock so that they could sell their own shares at an inflated price.

### Product Development and Contract Finalization

Defendant experienced product development and contract signing problems in connection with its new VisView product, an outgrowth of its merger with Rosetta.[5] Specifically, the product's release was delayed, and under pressure to get the product on the market, EAI cut short its quality assurance department's opportunity to fully test the product. When it was put on the market in March of 1999, customer dissatisfaction followed and major customers such as Lockheed Martin and Raytheon expressed their displeasure and refused to sign new contracts with EAI.

Plaintiffs argue this information was clear to defendants in late February, or in the first week of March 1999, and at this time a company-wide teleconference was held detailing the contract problems, which were apparent. However, EAI did not inform the public at that time that the company would not meet its 1999 first quarter earnings estimates.

### Filings, Releases, and Statements by Defendants

On March 4, 1999 EAI filed with the SEC amended 1997 10–K forms, and amended 10–Q forms for the first three quarters of 1998. These amended filings followed a statement by EAI representative Behar on February 18, 1999 in a press release that the company's IPR & D calculations in connection with Rosetta and Sense8 acquisitions would be amended, and that these amendments would "ha[ve] no impact on the Company's cash flows for any prior or future period." Ultimately, in the amendments EAI changed its original allocation of $5,599,000 to IPR & D from the Rosetta acquisition to $1,684,000, a 70% reduction; and also the IPR & D allocation for the acquisition of Sense8 changed from $9,800,000 to $1,900,000, an 81% reduction. The stock price did not drop immediately following the accounting change or the announcement of it.

As further evidence of an alleged fraudulent scheme by the defendants, plaintiffs specify press and financial information releases made by EAI during the relevant class period. These releases contained statements which relied upon the original IPR & D calculations from the two acquisi-

---

4. Further, plaintiffs point to a letter from the SEC's chief accountant to the American Institute of Certified Public Accountants, dated October 9, 1998, as support for their position that EAI's financial statements were false and misleading with regards to the IPR & D figures on the two acquisitions. That letter states that the SEC "has noted the unreasonable valuations of IPR & D" and goes on to state that these valuations "appear to be caused frequently by management's treatment

of attributes of capitalized assets as if they were attributes of IPR & D." Compl. ¶¶ 89.

5. After acquiring Rosetta in November 1997, EAI announced the development of its VisView product as an outgrowth of this previous acquisition. This product was to help corporations view and analyze all digital product data in a single visual environment. This initial announcement was made April 7, 1998. *See* Compl. ¶¶ 47.

tions.[6] The plaintiffs list a number of press releases and financial filings where EAI used the original IPR & D calculations, which showed higher revenues and less loss than would have been shown had the corrected IPR & D figures been used. Plaintiffs argue these were false statements by the company, a part of the continuous scheme by defendants to defraud.

On March 26, 1999 the Dow Jones Business News quoted defendant Rizai as saying it would be a "fair assumption" that EAI would meet its first quarter projections.[7] But, EAI did not meet its first quarter projections for 1999. On April 6, 1999 the failure became public as EAI revenues were announced in a press release at 15% below analyst's estimates. EAI appears to have attributed this shortcoming to the company's failure "to close six contracts" and defendant Rizai stated, "I'm more than disappointed—I'm personally embarrassed." The following day, April 7, EAI suffered a one-day market loss of $215 million, as the stock dove from $39.9375 per share to $21.6875 per share.[8] The stock continued its decline, and in December of 1999 it hovered around the eight dollar mark.

### Stock Sales by Individual Defendants

During the relevant class period, Rizai sold 179,227 shares of his EAI common stock, which totaled more than 20% of his holdings and for which he received over $7.5 million in proceeds. Vanderploeg also sold more than 20% of his holdings which resulted in approximately $7.5 million in proceeds. Behar sold 15% of his holdings totaling $83,700. The fourth individual defendant, Wade, did not sell any of his holdings during the relevant class period.

## II ISSUE

The primary question presented for decision by this Court is whether plaintiffs have met the standard for pleading with particularity to survive defendants' motion to dismiss their claims.

## III. APPLICABLE LAW & DISCUSSION

Plaintiffs claim in this case that defendants violated section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and

---

**6.** In Plaintiffs' complaint, they cite the following statements by EAI as false or misleading:

— Press release on February 19, 1998, along with filing of 1997 10–K form on March 12, 1998. EAI announced financial results for fourth quarter and full year of 1997. See Compl. ¶¶ 26–28.
— Filing of S–3 Registration Statement and Prospectus on March 17, 1998. EAI made a secondary offering of its stock sold by certain shareholders, including Rizai and Vanderploeg. See Compl. ¶¶ 29–31.
— Press release on April 30, 1998 and filing of 10–Q form on March 15, 1998. EAI announced financial results for first quarter of 1998. See Compl. ¶¶ 32–34.
— Press release on July 30, 1998 along with filing of 10–Q form, August 12, 1998. EAI announced financial results for second quarter of 1998. See Compl. ¶¶ 35–37.
— Press release on October 29, 1998 and filing of 10–Q form on November 16, 1998. EAI announced financial results for third quarter of 1998. See Compl. ¶¶ 38–40.
— Press release on February 18, 1999. EAI announced financial results for fourth quarter and all of 1998. EAI also an-

nounced the company was going to reallocate the portions of the Rosetta and Sense–8 acquisitions attributed to IPR & D. In the complaint, plaintiffs further allege that defendant Behar assured investors that "[t]his restatement has no impact on our cash flows for any prior or future period" and that the company was in "strong financial condition and our business prospect remain excellent." See Compl. ¶¶ 41–42.
— Amended 1997 10–K and amended 1998 10–Qs for first three quarters, March 4, 1999. These amended filings took account of altered IPR & D calculations from the acquisitions. The net loss for each of these periods was increased as a result of the amendment. See Compl. ¶¶ 43–44.

**7.** Plaintiff also cites various articles from financial analysts from March 1999 which predict EAI would remain a strong investment, and plaintiff claims that these articles were influenced by EAI controlling persons. See Compl. ¶¶ 54–59.

**8.** During the relevant class period, the stock's price had been more than $70 per share.

its closely related Rule 10b–5. "Section 10(b) specifically prohibits the use of any 'manipulative or deceptive device or contrivance' in connection with the purchase or sale of a security." *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1533 (8th Cir. 1996) (quoting 15 U.S.C. § 78j(b)) (citing *Herman & MacLean v. Huddleston,* 459 U.S. 375, 382, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)). Specifically this section states that it is unlawful for a person to:

> use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). And Rule 10b–5 goes further and

> provides that it is unlawful 'for any person, directly or indirectly,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.'

*Alpern,* 84 F.3d at 1533 (quoting 17 C.F.R. § 240.10b–5 (1995)).

Plaintiffs also contend defendants violated section 20A of the Securities Act. 15 U.S.C. § 78t–1 ("Liability to contemporaneous traders for insider trading"). For plaintiffs to properly state this claim, they must allege an insider trading violation "by an individual defendant and trading by the plaintiffs contemporaneously with that individual defendant." *In re Oxford Health Plans, Inc.,* 187 F.R.D. 133, 143 (S.D.N.Y. 1999).

Any person who violates any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable in an action in any court of competent jurisdiction to any person who, *contemporaneously* with the purchase or sale of securities that is the subject of such violation, has purchased (where such violation is based on a purchase of securities) securities of the same class.

15 U.S.C. § 78t–1(a) (emphasis added).

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss all or a portion of the claim "for failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). When considering a motion to dismiss, the Court will accept as true all factual allegations in the complaint. *McSherry v. Trans World Airlines, Inc.,* 81 F.3d 739, 740 (8th Cir.1996) (citing *Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 163–65, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)). "[T]he Court will draw all reasonable inferences in favor of plaintiffs." *In re Green Tree Financial Corp. Stock Litig.,* 61 F.Supp.2d 860, 868 (D.Minn.1999) (citing *Westcott v. Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990)). "Also, where relevant, this Court may consider all portions of documents relied upon in plaintiffs' complaints and of undisputed authenticity even though they are not physically attached to the pleading." *Id.* (citing *Vizenor v. Babbitt,* 927 F.Supp. 1193, 1198 (D.Minn.1996)). A motion to dismiss will be granted "only if no set of facts would entitle the plaintiff to relief." ' *Id.* (citing *Conley v. Gibson,* 355 U.S. 41, 45–47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### B. Whether Plaintiffs Appropriately and Sufficiently Pled Their 10(b) and Rule 10b–5 Claims Following the Enactment of the PSLRA

To prevail on the 10(b) and Rule 10b–5 claims, plaintiffs have to meet a four

part test. First, plaintiffs must show defendants acted in a manner prohibited by the rule, by making false statements or omitting material facts. *See BankAmerica Corp. Securities Litig.*, 78 F.Supp.2d 976, 989–90 (E.D.Mo.1999) (citing *In re NationsMart Corp. Securities Litig.*, 130 F.3d 309, 320 (8th Cir.1997); *Arthur Young & Co. v. Reves*, 937 F.2d 1310, 1327–28 (8th Cir.1991); *Zuckerman v. Foxmeyer Health Corp.*, 4 F.Supp.2d 618, 621 (N.D.Tex.1998)). Second, that plaintiffs relied on defendants' misrepresentations to their detriment. *Id.* Third, plaintiffs must show defendants acted with scienter. *Id.* And fourth, that the conduct of the defendants caused plaintiffs to purchase securities and suffer economic harm. *Id.* Succinctly stated, plaintiff must show: a false statement or an omission of a material fact, reliance, scienter, and resulting damages. *See Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1533–34 (8th Cir.1996).

For purposes of the current motion, particularly relevant is the recent statute which alters how courts are to view securities fraud actions brought by shareholders.[9] "The Private Securities Litigation Reform Act of 1995 [PSLRA] represents Congress' attempt to establish a uniform pleading standard that is more rigorous than that which some courts had concluded satisfied [Federal Rule of Civil Procedure] 9(b)."[10] PATTON & SAUNDERS, SECURITIES FRAUD: LITIGATING UNDER RULE 10B–5, § 5.401 (1997).

In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u—4(b)(2).[11]

The PSLRA's new uniform pleading standard was "based in part on the pleading standard of the Second Circuit" prior to this legislation, as its standard was perceived as "the most stringent." H.R. Conf. Rep. No. 104–369, 104th Cong., 1st Sess. 31 (1995) (Nov. 28, 1995) ("Conf. Rep."). The Second Circuit's basic standard was similar to that used in every other circuit as a plaintiff had to "plead that 'in connection with the purchase or sale of securities, the defendant, *acting with scienter,* made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's action caused [plaintiff] injury.'" *In re Time Warner Inc. Securities*

---

**9.** It is clear that the PSLRA is an explicit "rejection of the system of notice pleading that governed all civil actions in federal courts since 1938." Elliott J. Weiss and Janet E. Moser, *Enter Yossarian: How to Resolve the Procedural Catch–22 that the Private Securities Litigation Reform Act Creates*, 76 WASH. U. L.Q. 457, 457 (1998).

**10.** "[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally." FED. R. CIV. P. 9(b). "Rule 9(b), however, does not abrogate the general rule that 'pleadings are to be construed in a light most favorable to the pleader and accepted as true [and should not be dismissed] unless it appears that plaintiff can prove no set of facts that would entitle him to relief.'" *In re Ancor Communications, Inc.*, 22 F.Supp.2d 999,

1003 (D.Minn.1998) (quoting *Ross v. Bolton*, 904 F.2d 819, 823 (2nd Cir.1990)).

The purpose of strengthening 9(b), with the PSLRA, has been stated by the Eighth Circuit recently as to "deter fishing expeditions of unknown wrongs designed to compel 'in terrorem settlements' and to ensure the defendants are given sufficient notice of the allegations against them." *In re Green Tree Financial Corp. Stock Litigation*, 61 F.Supp.2d 860, 869 (D.Minn.1999) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 549 (8th Cir.1997)) (quoting *Weisburgh v. St. Jude Med., Inc.*, 158 F.R.D. 638, 642 (D.Minn.1994)).

**11.** "[T]he Reform Act [PSLRA] nowhere defines what the 'required state of mind' is for any of the kinds of actions that might be brought under this title...." *In re Baesa Securities Litig.*, 969 F.Supp. 238, 240 (S.D.N.Y. 1997).

*Litigation,* 9 F.3d 259, 264 (2d Cir.1993) (quoting *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985)) (emphasis added). The important and relevant part of the standard established by the Second Circuit was that it allowed scienter to be shown in two different ways: (1) by alleging facts "establishing a motive to commit fraud and an opportunity to do so," or (2) by alleging facts "constituting circumstantial evidence of either reckless or conscious behavior." *In re Time Warner,* 9 F.3d at 269; *see also Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124 (2d Cir.1994).

There is currently a split among the circuits as to what the appropriate pleading standard is under the PSLRA and whether it mirrors the preexisting Second Circuit standard. *Compare Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970 (9th Cir.1999) and *Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1999 WL 688050 (11th Cir. Sept.3, 1999) (holding the PSLRA standard for pleading scienter is more stringent than the Second Circuit's standard prior to the Act, and that motive and opportunity is not an independent basis to show defendant's had scienter) *with Press v. Chem. Inv. Serv. Corp.,* 166 F.3d 529, 538 (2d Cir.1999), *Greebel v. FTP Software, Inc.,* 194 F.3d 185 (1st Cir.1999), and *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177–78 (5th Cir.1997) (holding the PSLRA codified the prior standard set up by the Second Circuit). Unfortunately, the Eighth Circuit has not addressed the issue of how plaintiffs can adequately plead scienter under the PSLRA.

 In *Green Tree Fin. Corp. Stock Litig.,* 61 F.Supp.2d 860 (D.Minn.1999), Judge Tunheim in dicta found the analysis

from a Third Circuit opinion, *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 529–35 (3rd Cir.1999), most persuasive. This Court agrees. The *Advanta* Court thoroughly examined the plain meaning of the PSLRA along with its legislative history. The *Advanta* court held that motive and opportunity was still a viable inquiry when determining whether a plaintiff has made the requisite factual allegations to withstand a defendant's motion to dismiss under the PSLRA. While not going as far as *Silicon Valley* or *Avado Brands,* the *Advanta* court did hold that the PSLRA did more than codify then-existing Second Circuit law. *Advanta* held that both avenues set forth by the Second Circuit to plead scienter [12] are available to plaintiffs under the PSLRA, but that under the PSLRA, plaintiffs must now support all allegations with "facts stated 'with particularity' and [these facts] must give rise to a 'strong inference' of scienter." *Id.* at 535.

These heightened pleading requirements address the previous ease of alleging motive and opportunity on the part of corporate officers to commit securities fraud. Permitting blanket assertions of motive and opportunity to serve as a basis for liability under the Exchange Act would undermine the more rigorous pleading standard Congress has established. *After the Reform Act, catch-all allegations that defendants stood to benefit from wrongdoing and had the opportunity to implement a fraudulent scheme are no longer sufficient, because they do not state facts with particularity or give rise to a strong inference of scienter.*

*Id.* (emphasis added).[13] Whether in application the *Advanta* court's understanding

---

**12.** One, plaintiff can "establish[]" a motive and an opportunity to commit fraud," or two, "by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior." *Advanta,* 180 F.3d at 534–35 (quoting *Weiner v. Quaker Oats Co.,* 129 F.3d 310, 318 n. 8 (3d Cir.1997)).

**13.** The Court finds it is worth noting the decision of *In re Baesa Securities Litig.,* 969 F.Supp. 238 (S.D.N.Y.1997). *See also* Lisa A. Herrera, Comment, *Will Motive, Opportunity or Recklessness No Longer Constitute Scienter for Fraud? A Survey of Recent Federal District Court Decisions After the Enactment of the 1995 Private Securities Litigation Reform Act,* 26 PEPP. L. REV. 379, 395, 406 (1999) (stat-

of the standard is really that much different from what the Second Circuit held previously is open to debate. This Court concludes, however, that the *Advanta* court best pays credence to what Congress was attempting to do in enacting the PSLRA.

Of the two standards which a plaintiff has available to sufficiently plead a defendant's requisite scienter, recklessness is the more difficult. "Recklessness encompasses behavior that is 'an extreme departure from ordinary care, which presents a danger of misleading the public that is either known to the defendants or so obvious that the defendants must have been aware of it.'" *Green Tree*, 61 F.Supp.2d at 870–71 (citing *Advanta*, 180 F.3d at 535 (quoting *McLean v. Alexander*, 599 F.2d 1190, 1197 (3rd Cir.1979)); *Friedberg v. Discreet Logic Inc.*, 959 F.Supp. 42, 49 n. 2 (D.Mass.1997); *Silicon Graphics*, 183 F.3d 970 (9th Cir.1999)). "A violation of GAAP, combined with other circumstances suggesting fraud, may create a strong inference of scienter." *In re Digi Int'l Securities Litig.*, 6 F.Supp.2d 1089, 1098 (D.Minn.1998) (citing *Rehm v. Eagle Finance Corp.*, 954 F.Supp. 1246, 1255–5 (N.D.Ill.1997) and *Marksman Partners*, 927 F.Supp. 1297, 1313 (C.D.Cal.1996)).

### 1. Information and Belief Requirement

Defendants claim plaintiffs have failed to "state with particularity all facts" on which their allegations of fraud are based. Specifically, defendants claim plaintiffs have failed to disclose the underlying sources of their factual allegations, and that this is fatal to their ability to withstand this motion to dismiss. Plaintiffs counter that the PSLRA requires them to list all facts, but not the sources, and in particular, not confidential informants which plaintiffs' counsel does not want to disclose. Plaintiffs also state that it is within the parameters of the law for them to base their facts on the investigation of counsel and that this is sufficient to support their pleading based on information and belief.

 Plaintiffs are required to disclose the sources of their factual allegations. "Where 'allegations of fraud are ... based only on information and belief, *the complaint must set forth the source of the information* and the reasons for the belief.'" *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir.1997) (quoting *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir.1991)) (emphasis added); *see also Green Tree*, 61 F.Supp.2d at 871–2, n. 11 (finding that the failure of the class plaintiffs to disclose the name of an individual who gave the plaintiffs' attorneys information about financial problems the defendants were having caused this factual allegation to not be sufficiently particularized). Plaintiffs have given the sources of their factual allegations, with one significant exception. Plaintiffs do not state who informed them of the alleged company-wide teleconference which occurred in either late February or early March of 1999. Plaintiffs state that during this teleconference, defendant Rizai admitted the company was not going to meet projected sales or earnings for the first quarter of 1999. But the source is not given, and therefore the particularity requirement is not met with regards to this factual allegation.[14]

ing the *Baesa* case should be used for guidance by appellate courts in deciding what pleading standard is set up by the PSLRA). The *Baesa* court held that pleading motive and opportunity alone was not sufficient to establish scienter under the PSLRA, as the plain language of the PSLRA does not mention this avenue. *Baesa*, 969 F.Supp. at 242. This court recognizes the *Baesa* court's attempt to discern the standard, but finds the analysis of the Third Circuit in *Advanta* more

persuasive. The Court does not agree with the *Baesa* court that "the statutory text is so plain" such that "resort to legislative history is neither necessary nor prudent." *Baesa*, 969 F.Supp. at 241.

14. This Court echoes the comment of the *Green Tree* court when it stated that the failure of the plaintiffs to disclose the source of its information "is troubling ... [g]iven the clear importance of such an allegation, which may go directly to the issue[ ] of knowledge

## 2. Reliance

■ Defendants allege that plaintiffs lack standing as no plaintiff is alleged to have bought stock after any alleged false statement was made by defendants. Defendants argue that there is no way plaintiffs could possibly have relied upon such statements, the first element of a 10b–5 action, and therefore do not have standing to make such a claim. *See Alpern,* 84 F.3d at 1533–34. Specifically, plaintiffs' complaint lists the dates on which the plaintiffs class representatives traded EAI stock, and the last date upon which such trade was made was January 29, 1999. *See* Compl. ¶ 16. Defendants argue that the key statements made by defendants which are alleged to be fraudulent and misleading were made after this time, and thus plaintiffs cannot meet the reliance prong of the test.

"[A]n alleged fraud cannot be in connection with the purchase or sale of a security if the transaction occurs prior to the fraud. The alleged fraud must be prior to or contemporaneous with the securities transaction in question." *Perez–Rubio v. Wyckoff,* 718 F.Supp. 217, 236 (S.D.N.Y.1989) (cited in *Dietrich v. Bauer,* 76 F.Supp.2d 312, 342 (S.D.N.Y.1999)).[15] The fraud alleged by plaintiffs dates back to the first day of the relevant class period, February 19, 1998. Plaintiffs allege a continuous fraudulent scheme by defendants, and not that defendants only engaged in fraudulent acts when they announced in their February 1999 press release that the IPR & D figures for the acquisition of Rosetta

and Sense8 were going to have to be changed. Further, the Supreme Court has approved of the "fraud on the market theory." *Basic Inc. v. Levinson,* 485 U.S. 224, 241–50, 108 S.Ct. 978, 99 L.Ed.2d 194 (holding reliance is still an element of a 10b–5 action and that the fraud on the market theory, subject to rebuttal, is applicable to meet the reliance element in securities fraud cases where corporations make materially misleading statements in an impersonal and efficient market). Plaintiffs impliedly allege that they relied on the market price every day during the relevant period, and that every day that price was affected by the amount of the acquisitions which EAI allocated to IPR & D. The Court finds that these were materially misleading statements for purposes of reliance. The IPR & D calculations were significantly altered.[16] The SEC letter came out in October 1998 and the defendants waited until February 1999 to change the IPR & D figures for its acquisitions. The Court therefore finds that plaintiffs have standing as the reliance element is met.

Also, the Court finds that the final element of a 10b–5 action, causation, has been met for purposes of this motion. Plaintiffs purchased securities and suffered economic harm. The parties do not significantly address this element in their briefs. Defendants argue causation cannot be met because when the accounting reallocation was done in February 1999, the stock price did not drop. The Court rejects this argument.[17] The Court finds that, as a matter

... to defraud...." *Green Tree,* 61 F.Supp2d at 872, n. 11.

**15.** If this had been a situation where the parties dealt directly with each other, a presumption of reliance would be allowed so long as information omitted by defendants was shown to be material. *See In re Nations-Mart Corp. Securities Litig.,* 130 F.3d 309, 321 (8th Cir.1997). That is not this case, however.

**16.** The Rosetta IPR & D allocation was reduced by 70% from $5,599,000 to $1,684,000

and the Sense8 figure was reduced by 81% from $9,800,000 to $1,900,000.

**17.** In another case in which the defendants made changes to their accounting calculations, and the stock price did not immediately drop, the Eighth Circuit stated: "The fact that the misrepresented earnings figures did not affect the stock price does not negate the possibility that investors were misled in other ways by the improper accounting maneuvers." *In re Control Data Corp. Securities Litig.,* 933 F.2d 616, 620 (8th Cir.1991). This Court concurs in the case at hand, and finds defendants IPR & D accounting maneuvers

of law, it cannot determine whether defendants' activities actually caused plaintiffs to purchase their shares of EAI. It is an issue of fact.[18]

### 3. Whether Plaintiffs Adequately Pled Actionable Misrepresentations or Omissions of Material Facts

Plaintiff's Exhibit A, attached to its resistance brief, lists twelve alleged misrepresentations and omissions of material facts by defendants.[19] The majority of the statements listed by the plaintiffs revolve around defendants' accounting practices. The March 26, 1999 statement by Rizai in Dow Jones Business News also implicates the alleged product development and contract finalization failures. Plaintiffs argue this statement by Rizai was false because it did not accurately account for what Rizai and defendants knew about their sales and about their earnings for that first quarter of 1999.

Plaintiffs essentially claim defendants violated GAAP, generally accepted accounting principles, with their original accounting practices in allocating IPR & D following the acquisitions of Rossetta and Sense8. "GAAP is not a hard-and-fast set of rules that define for all purposes the proper accounting treatment for every conceivable business transaction. Inherent in the application of these accounting principles is the ability of accountants to select from among various acceptable accounting treatments." Sarah R. Wolff, *Financial Fraud Allegations in Private Securities Fraud Actions: GAAP violations and Restatements of Earnings*, 1115 PLI/Corp 99, 102 (April–May 1999). These principles are rather fluid, and are estab-

lished by the American Institute of Certified Public Accountants ("AICPA") and found in official publications. *See generally Providence Hosp. of Toppenish v. Shalala*, 52 F.3d 213, 218 (9th Cir.1995). Sometimes, though, there is no official pronouncement and the consensus of the accounting profession determines what is GAAP's standard. *Id.*

Plaintiffs reference standards under GAAP which state that when a company acquires another company and acquires research and development value from that company, that value should be capitalized and amortized as an intangible asset if the research and development project has alternative future uses. Alternatively, if the IPR & D portion of the acquisition is purchased for a particular research and development project and otherwise has no separate economic value, then that amount can be expensed as a cost at the time the cost is incurred. *See* Compl. ¶¶ 77–78 (citing SFAS No. 2 and FASB interpretation No. 4). These are appropriate standards when the purchase method of accounting is used, as is true in this case.[20] Plaintiffs also rely heavily upon a letter to the AICPA from the Security Exchange Commission's Chief Accountant in October of 1998. This letter states that IPR & D was being used often in business combination purchases to disguise the acquisition of assets. Further, the letter stated that acquiring companies would have to restate their financial statements and also inform the public of "material assumptions underlying the purchase price allocation." *See* Compl. ¶ 89.

---

could be found to be improper and to have caused the plaintiffs to invest and suffer damages, even though a dip in stock price did not immediately follow the reallocation of the IPR & D figures.

**18.** For instance, the jury could determine that the acquisitions of the two companies and the related allocations of IPR & D caused plaintiffs to purchase stocks and suffer economic harm.

**19.** These are summarized in this Order in footnote 6, *supra*.

**20.** For the relevant portions of the acquisitions at issue in this case, it is not disputed by the parties that the purchase method and not the "pooling of interest" method was used.

■ The Court notes that the allocation of IPR & D by defendants appears to have been done at a time when many companies were engaging in similar practices. *See* Declaration of Cheryl W. Foung in Support of Defendants' Motion to Dismiss, Exh. EE (letter form SEC's Chief Accountant on October 9, 1998). The fact that many companies were doing the same thing, however, does not excuse a fraudulent practice. Further, the amount by which EAI re-allocated its IPR & D calculations, by 70% and 81%, supports a contention that this was not just a marginal judgment call by EAI's accountants. It appears EAI consciously chose to show a very significant portion of the value of their acquisitions as IPR & D. The magnitude of their reporting decisions was so large that defendant's IPR & D allocation accounting, and related statements, could be shown to be fraudulent. *See also In re Leslie Fay Companies, Inc. Securities Litig.,* 835 F.Supp. 167, 174–75 (S.D.N.Y. 1993) (impliedly finding that the magnitude of the alleged fraud is appropriate to consider when determining whether to dismiss a securities fraud class action). Further the Court cannot find as a matter of law that these statements are immaterial.[21]

■ With regard to the February 18, 1999 statement by Behar, the Court finds that this constituted "puffery." In *Parnes v. Gateway,* 122 F.3d 539, 547 (8th Cir. 1997), the Eighth Circuit stated that "[t]he role of the materiality [of the statement or omission] requirement is not to attribute to investors a childlike simplicity but rather to determine whether a reasonable investor would have considered the omitted information significant at the time." In this case, the February 18 statement was

that Behar considered EAI to be "in strong financial condition and our business prospects remain excellent." Investors expect companies to think the best of themselves and predict growth. A reasonable investor should understand that an accounting re-allocation of the magnitude which EAI was discussing could have an effect upon that company's stock value, and it is not the duty of the company to completely educate investors as to how a stock price is affected when accounting allocations are altered.

Further, as noted above, plaintiffs have not given the source of their knowledge regarding the alleged tele-conference which occurred throughout EAI in late February or early March 1999 concerning the product development and contract problems. The Court finds that relatedly, plaintiffs have not pled sufficient facts regarding the product development and contract problems to show that the February 18, 1998 statement was fraudulent because defendants failed to inform the public of their problems. There is no evidence that defendants knew that the contracts would not be finalized.

■ Finally, the March 26, 1999 article in Dow Jones Business News was in part: "[EAI] is comfortable with Wall Street's growth projections and earnings estimates for 1999, Chief Executive Matthew Rizai told Dow Jones. Rizai declined to comment on specific figures, but he did say double-digit growth would be a 'fair assumption.'" *See* Defendant's Exhibit CC (cited as Foung Decl., Ex. CC). Defendants argue Rizai was not referring to the first quarter of 1999 and generally was just making a forward-looking statement.

---

21. "A misrepresentation or omission is material if there is 'a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" *Parnes v. Gateway 2000, Inc.,* 122 F.3d 539, 546 (8th Cir.1997) (quoting *Basic Inc.,* 485 U.S. at 231–232, 108 S.Ct. 978). The *Parnes* court held that the determination of whether a statement or omission is material is a question of law "[w]here a reasonable investor could not have been swayed by an alleged misrepresentation." *Id.* This Court finds that investors pay close attention to acquisitions of companies, and therefore could have been swayed by the acquisitions and what EAI claimed to be acquiring—a substantial amount of IPR & D.

Such forward looking statements are protected by the "safe harbor" provision of the PSLRA. *See* 15 U.S.C. § 78u–5(c)(1)(B). The safe harbor, however, does not insulate defendants if the statements at issue are based on "historical/hard or current facts" that are misrepresented. *Gross v. Medaphis Corp.*, 977 F.Supp. 1463, 1473 (N.D.Ga.1997). The Court finds this statement was protected by the safe harbor provision as it was forward looking for the entire fiscal 1999, and not a statement regarding the first quarter.[22]

### 4. Whether Plaintiffs Adequately Pled Scienter

■ In looking at the accounting allegations and the alleged false statements and omissions made by the defendant, the Court finds plaintiffs have adequately pled that the defendants had motive and opportunity to make these fraudulent statements. Three of the four individual defendants sold stock during the relevant class period, and two of them sold significant amounts—over seven million dollars worth each. These defendants appear, based on the complaint, to have had the opportunity to influence how much of the Rossetta and Sense–8 acquisitions would be attributed to IPR & D.

Even if the Eighth Circuit were to find motive and opportunity is not an available method to evidence scienter under the PSLRA, the recklessness standard has also been met by the plaintiffs in this instance. The original IPR & D allocations had to be reduced by 70%, a nearly four million dollar reduction, and by 81%, a nearly eight million dollar reduction. Further, the original IPR & D figures were very significant parts of the total acquisition transaction—97% in the Sense–8 acquisition. EAI was telling investors they were buying a company's future growth,

only later to change their minds and tell the investing public that what they had really purchased were assets. The GAAP violations alleged here, along with other circumstances, create a strong inference of scienter. *See In re Digi Intern., Inc. Securities Litig.*, 6 F.Supp.2d 1089, 1098 (D.Minn.1998) ("A violation of GAAP, combined with other circumstances suggesting fraud, may create a strong inference of scienter.") (citing *Rehm v. Eagle Finance Corp.*, 954 F.Supp. 1246, 1255–56 (N.D.Ill. 1997) and *Marksman Partners, L.P. v. Chantal Pharmaceutical Corp.*, 927 F.Supp. 1297 (C.D.Cal.1996)).

### C. Plaintiffs' Section 20A Claim

■ Section 20A provides a cause of action to individuals who buy stock contemporaneously with an individual defendant's sale of stock when that defendant is "in possession of material non-public adverse information about EAI." 15 U.S.C. § 78t(d). Plaintiffs, in their resistance, attach the affidavit of Jordan Klein that evidences that he traded contemporaneously with defendant's sales as his purchase of 400 shares of EAI was three days after the March 24, 1998 sales by defendants Rizai and Vanderploeg. This is contemporaneous for purposes of Section 20A. *See In re Oxford*, 187 F.R.D. 133, 144 (S.D.N.Y.1999).

### IV CONCLUSION

For the above stated reasons, defendants motion to dismiss is **granted in part** and **denied in part.** Defendants' motion is granted with respect to EAI's product development and contract finalization failures, and certain statements and omissions. These statements include the February 18, 1998 statement by defendant Behar, as it was puffery; the March 26,

---

**22.** If indeed Rizai had stated EAI would have double-digit growth for the first quarter, and the plaintiffs could show any valid evidence that the defendants knew the upcoming product development and contract failures were bound to happen, the Court would be more apt to find the statement not protected by the safe harbor provision as it was so close in time to the April 6 stock plunge. Plaintiffs have not met either of these qualifications, however.

1999 comment by Rizai in the Dow Jones Business News article, as it was protected by the PSLRA safe harbor; along with the alleged February or March 1999 inter-company teleconference, because of the plaintiff's failure to plead the source. Defendants' motion is denied concerning EAI's IPR & D accounting practices, and related statements and omissions. These statements include the multiple filings and financial disclosures made by the defendants throughout the relevant period. Plaintiffs section 10(b), rule 10b–5 and section 20(a) claims survive insomuch as they reference the IPR & D accounting practices of defendants, and related statements and omissions.

IT IS SO ORDERED.